# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

**DUSTIN B.[1]**,

               Plaintiff,

    v.

**KILOLO KIJAKAZI,** Acting
Commissioner of Social Security,

            Defendant.

Case No. 6:20-cv-99-SI

**OPINION AND ORDER**

Mark Manning, HARDER, WELLS, BARON & MANNING, PC, 474 Willamette Street, Eugene, OR 97401. Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Jeffrey E. Staples, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

       Dustin B. (Plaintiff) brings this action pursuant 42 U.S.C. §§ 405(g) and 1382(c)(3) to

obtain judicial review of the final decision of the Commissioner of Social Security

---

       [1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

(Commissioner) finding that Plaintiff was not disabled under the meaning of the Social Security Act (Act). For the following reasons, the Commissioner's decision is REVERSED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff filed a Title II application for a period of disability and disability insurance benefits, and a Title XVI application for supplemental security income on December 13, 2016. In

both applications, Plaintiff alleged a disability onset date of January 14, 2016. Plaintiff was born

on August 29, 1993 and was 22 years old at the alleged date of disability onset. The claim was

denied initially and upon reconsideration. Plaintiff requested a hearing and appeared before

Administrative Law Judge John D. Sullivan on August 13, 2018. The ALJ issued a decision

denying Plaintiff's claim for benefits. The Appeals Council denied a request for review, making

the ALJ's decision the final decision of the Agency. Plaintiff timely appealed to this Court,

seeking reversal of the ALJ's determination of Plaintiff's RFC and a finding of disability.

**B.  The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
significant mental or physical duties done or intended to be done for pay
or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
such work, she is not disabled within the meaning of the Act. 20 C.F.R.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's
regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
impairment or combination of impairments is "severe" if it significantly
limits the claimant's physical or mental ability to do basic work activities.

20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

As a preliminary step, the ALJ found that Plaintiff met the insured status requirement of the Act by acquiring sufficient quarters of coverage to remain insured through June 30, 2017. AR 15. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 14, 2016. AR 15. At step two the ALJ found the following severe impairments: psychotic disorder; bipolar disorder; and attention deficit hyperactivity disorder. AR 15. At step three, the ALJ found that none of Plaintiff's severe impairments met or equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR. 16-17.

Before proceeding to step four, the ALJ assessed Plaintiff's RFC. The ALJ assigned Plaintiff an RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: Plaintiff can understand, remember, and carry out simple, routine tasks (reasoning level 2 or less); using judgment is limited to simple work related decisions; occasionally respond appropriately to coworkers, supervisors, and the general public; dealing with changes in the workplace setting is limited to simple work related decisions; time off task would be accommodated by normal breaks. AR 17-19. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. AR 19. Proceeding to step five, the ALJ found Plaintiff would be able to perform the jobs of kitchen helper; hand packager; and laborer, stores.

AR 20. The ALJ then found that Plaintiff had not been under a disability, as defined by the Act,

from January 14, 2016, through December 4, 2018, the date of the decision. AR 21.

## DISCUSSION

Plaintiff objects to three aspects of the ALJ's decision. First, Plaintiff argues that the ALJ

did not give specific, clear, convincing, reasons supported by substantial evidence to give less

than full credit to Plaintiff's subjective symptom testimony. Second, Plaintiff argues that the ALJ

did not provide germane reasons to discount the competent lay witness testimony of his former

roommate. Third, Plaintiff argues that the ALJ did not consider the appropriate factors when

evaluating the opinion of the state agency's consulting physicians, who did not treat or examine

Plaintiff.

## A.  Subjective Symptom Testimony

Plaintiff argues that the ALJ did not specifically identify what testimony was not

credible, did not explain why that testimony was not credible, and did not support the decision to

discount Plaintiff's testimony with clear, convincing, and substantial evidence. The

Commissioner disagrees and adds that even if there was an error, it was harmless.

A claimant "may make statements about the intensity, persistence, and limiting effects of

his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[2] There is a two-step

process for evaluating a claimant's testimony about the severity and limiting effect of the

claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must

determine whether the claimant has presented objective medical evidence of an underlying

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's

statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

### 1.  Specificity of the ALJ's Opinion

Plaintiff is correct that the ALJ's decision did not explain which evidence supports giving less than full credit to which symptom testimony. First, the ALJ described Plaintiff's symptom testimony:

> [H]e did not think he could do another job like his last job at Walmart, as it required a lot of team effort that he was uncomfortable with. He tried not to interact with people often. He goes on walks alone and is able to stay in his room during the day. He has a television with cable and a PlayStation 2 in his room. He gets overwhelmed when he is put in a situation where he has to have conversations.

He testified that he was in good physical condition. He indicated that he could not perform a simple repetitive job that did not require interacting with a lot of people because he was afraid of depression and the routine was stressful. He indicated that his last job at Walmart took a toll on him, he got depressed and was unable to show up for work. He testified that he was not receiving injections when working at Walmart. He testified that injections have helped with his symptoms.

AR 17.

The ALJ next said: "As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because in July 2016, the claimant was brought to the emergency room by family for bizarre behaviors and hearing voices (4F)." AR 18. The ALJ does not state what testimony is contradicted by Plaintiff's presentation to the ER in 2016 for symptoms of psychosis. Presumably, without specification or any obvious connection, the ALJ means that all of the just-recited testimony is so contradicted, which would include Plaintiff's depression as a result of the stress from his Walmart job and his difficulty interacting regularly with others. It is not apparent to this Court in any way how one 2016 ER visit, for the symptoms Plaintiff alleges partially cause his inability to work, is inconsistent with his symptom testimony as summarized immediately before by the ALJ.

Later in the same paragraph, the ALJ notes that Plaintiff's 2016 emergency visit notes mentioned possible effects of methamphetamine use. AR 18. The ALJ does not directly connect his statement that the ER visit undermines Plaintiff's symptom testimony with the note from that visit to rule out causation by methamphetamine use. Even if this connection was overtly drawn, the note in Plaintiff's 2016 ER visit record about whether Plaintiff's methamphetamine use contributed to his psychosis does not undermine Plaintiff's symptom testimony. The record shows, as the ALJ acknowledges, that Plaintiff was not using methamphetamine at the time of the hearing or for a period of time before then but continued to experience similar symptoms.

The ALJ found, and the medical record supports, that during the time Plaintiff was not using methamphetamine he had psychotic disorder, bipolar disorder, and attention deficit hyperactivity disorder. *See* AR 15 (ALJ findings on Plaintiff's severe impairments). Next, the ALJ provided a summary of plaintiff's medical record in support of the finding that Plaintiff's testimony was not to be given full weight. But this summary is highly general and does not connect in any obvious manner either to the 2016 ER visit or to the testimony summarized above it.

The Commissioner argues that the ALJ's decision need only be specific enough to enable the reviewing court to determine whether the ALJ arbitrarily discredited Plaintiff's testimony. The ALJ noted Plaintiff's testimony that he "could not perform a simple repetitive job that did not require interacting with a lot of people because he was afraid of depression and the routine was stressful." AR 17. The Commissioner argues that the ALJ supported his disregard of this testimony with the medical evidence showing improvement with treatment, inconsistent statements about why Plaintiff lost his previous job, and activities showing greater functionality. But there is no clear or convincing connection between the ALJ's recital of Plaintiff's testimony and the ALJ's later discussion of various aspects of the evidence in the record. Even if the ALJ's opinion need only be specific enough to show that testimony was not arbitrarily disregarded, the ALJ's opinion does not meet this standard.

The written opinion does not clearly identify which symptom testimony is not being credited, and for which reasons. The summary of symptom testimony is interwoven with non-symptom testimony details about Plaintiff and the medical record, making it unclear which testimony the ALJ is later discrediting. The ALJ only explicitly gives one reason for the decision not to credit the testimony (*i.e.*, the 2016 ER visit) and that reason does not logically support discrediting the symptom testimony. Any further reasons given are not clearly stated in a manner

that permits this Court to determine that the ALJ's decision to discount Plaintiff's testimony was

not arbitrary.

### 2. Medical Record

Plaintiff also argues that the ALJ's summary of the medical evidence is one-sided,

presenting only evidence that supports a finding of non-disability, and excluding evidence that

contradicts such a finding. Plaintiff highlights the following aspects of his record that he argues

the ALJ ignored:

> [AR] 532, 531, 534 (January of 2018 – auditory hallucinations,
> anxious, blunted affect, anxiety, depression); [AR] 625, 627, 628
> (April of 2018 – anxiety 4-7 on scale of 10, affect mildly
> constricted and blunted, voices starting to come back); [AR] 639
> (May of 2018- hears voices daily, gets overwhelmed, continues to
> feel best when isolated, but he does like being outside by himself);
> [AR] 646 (May 29, 2018 – anxiety 7 on scale of 10, occasional
> hallucinations, affect constricted and blunted); [AR] 644 (May 22,
> 2018 - fragile stability on meds ); [AR] 657 (July 5, 2018 fragile
> stability on meds); [AR] 532, [AR] 533, [AR] 535, [AR] 539
> (Plaintiff's homicidal ideation in 2018 associated with hurting the
> person he lived with when he had to remove himself from the
> living situation).

ECF 16 at 8. By discussing positive instances only, and neglecting to mention the above

evidence, the ALJ "cherry-picked" evidence supporting a non-disability finding. The standard

for substantial evidence is "less than a preponderance," and the Court is highly deferential to the

ALJ's interpretation of the evidentiary records. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554

F.3d 1219, 1222 (9th Cir. 2009). But referring only to findings that support non-disability while

ignoring evidence supporting disability is not substantial evidence. *See Holohan v. Massanari*,

246 F.3d 195, 1207 (9th Cir. 2001) (ALJ who relied on selective entries in medical record

documenting positive status while ignoring more voluminous body of evidence showing negative

status was not supported by substantial evidence). On this issue, the ALJ committed legal error.

The Commissioner argues that "The ALJ determined that Plaintiff's allegations of disabling fatigue and chemical sensitivity were 'inconsistent' with the medical record, which showed that he improved with treatment." ECF 17 at 3. It is unclear what the Commissioner is referring to, as the record does not contain reference to any "chemical sensitivity." While Plaintiff's fatigue is noted at one point in the record (AR 590), it is not mentioned in the ALJ's opinion, nor does Plaintiff object that fatigue should have been a credited symptom. The Commissioner proceeds to discuss the ALJ's finding that Plaintiff improved with oral Risperdal treatment and that when Plaintiff complied with his medications his mood was "pretty good" and his hallucinations were "pretty much gone." ECF 17 at 3, quoting AR 443 and 632. At AR 632, which are the same treatment notes that the ALJ and Commissioner rely on, the treatment notes state that Plaintiff's anxiety is at a 6-7 on a scale of 1-10, that he is paranoid and feels like he is being watched, and that he avoids people when he is walking downtown.

The ALJ's evaluation and application of the medical record to Plaintiff's symptom testimony was not clear, convincing, or based on substantial evidence. Although the Court is highly deferential to the ALJ's decision about how to weigh conflicting medical evidence in an applicant's record, pointing to two positive notes and entirely ignoring the body of negative notes is not clear, convincing, or substantial evidence. *See Holohan*, 246 F.3d at 1207.

### 3. Termination of Employment from Walmart

Plaintiff further argues that the ALJ implied that Plaintiff was dishonest about the reason that Walmart terminated Plaintiff's employment, but that such a conclusion cannot be properly drawn from Plaintiff's testimony. The ALJ said: "The claimant initially testified that his last job at Walmart ended because he was developing depression, he was not showing up to work enough, and got terminated. However, he later testified that he was using methamphetamines at the time he was terminated from his last job." AR 19. The ALJ implies, without support, that

Plaintiff's admission he was using methamphetamine during the period he was working at Walmart contradicts Plaintiff's stated reason for termination, which was his failure to show up to work due to his depression. Whether or not the ALJ also intended to impugn Plaintiff's truthfulness, the ALJ's speculative implication that methamphetamine use caused Plaintiff's termination, and that depression did not, is not clear or convincing. To the extent the ALJ relied upon this assumption, it is not a logically consistent or valid reason in support of the ALJ's ultimate finding.

### 4. Plaintiff's Work at the Mission

The ALJ also briefly explained Plaintiff's volunteer work history at the Mission, where Plaintiff lives. Plaintiff previously volunteered for the Mission full-time for seven months. Initially this volunteering was in exchange for his housing, but Plaintiff continued to volunteer for a period after receiving housing assistance. Plaintiff testified that he he had severe anxiety when interacting with people and stopped that volunteer work as a result. He now does occasional work in a warehouse area at the Mission to pay for his laundry. While the ALJ mentions these facts, it is not clear from the opinion whether and how they impacted the ALJ's evaluation of Plaintiff's symptom testimony. To the extent the ALJ relied upon Plaintiff's ability, for a short period of time, to do full-time volunteer work, which was ended because of Plaintiff' symptoms, that evidence is not clear, convincing, and substantial in support of Plaintiff's ability to maintain full-time Substantial Gainful Activity (SGA).

### 5. Daily Living Activities

In addition, Plaintiff argues that the ALJ did not discuss Plaintiff's daily activities, which were highly limited and supported his symptom testimony. The Commissioner argues that the ALJ relied upon Plaintiff's activities, namely Plaintiff's previous volunteer work in the kitchen at the Mission.

The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ mentioned but did not discuss the impact of Plaintiff's testimony that "He reported going for a walk, going to the store, watching television, getting bored, and working on going out more." It is not clear in the written opinion how, if at all, the ALJ relied upon these activities in support of the finding that Plaintiff's symptom testimony was given less than full credit. The only "activities" the ALJ seemingly relied on was Plaintiff's experience volunteering. Plaintiff stopped volunteering full-time as a result of his symptoms. This does not contradict or undermine Plaintiff's symptom testimony. Plaintiff's periodic warehouse work, which does not appear to require a regular work schedule, also does not contradict or undermine his symptom testimony.

### 6. Conclusion

The ALJ failed to provide clear, convincing reasons supported by substantial evidence for failing to credit Plaintiff's symptom testimony. This failure constituted harmful error. An error is harmless if it is "inconsequential to the ultimate non-disability determination." *Molina v.*

*Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *see also Robbins*, 466 F.3d at 885 (noting that an error is harmless if it is "clear from the record the error was inconsequential to the ultimate non-disability determination"). A court should not automatically reverse on account of error, but should make a determination of prejudice. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). "Determination of prejudice requires 'case-specific application of judgment, based upon examination of the record,' not 'mandatory presumptions and rigid rules.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)). These case-specific factors are "various" and potentially include, among others:

> an estimation of the likelihood that the result would have been different, an awareness of what body (jury, lower court, administrative agency) has the authority to reach that result, a consideration of the error's likely effects on the perceived fairness, integrity, or public reputation of judicial proceedings, and a hesitancy to generalize too broadly about particular kinds of errors when the specific factual circumstances in which the error arises may well make all the difference.

*Shinseki*, 556 U.S. at 411-12.

The party claiming error has the burden "to demonstrate not only the error, but also that it affected his [or her] 'substantial rights,' which is to say, not merely his [or her] procedural rights." *Ludwig*, 681 F.3d at 1054. Additionally, a reviewing court can determine, based on the circumstances of the case, that further administrative review is required to determine whether there was prejudice from the error. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). Mere probability of prejudice is not enough, but where there is a substantial likelihood of prejudice, then remand is appropriate. *Id.*

There is a substantial likelihood that the ALJ's error was prejudicial as to the ultimate outcome of Plaintiff's application for benefits. Plaintiff's testimony, if credited, likely precluded a finding that he would be able to maintain SGA. The vocational expert testified that a worker

who was off task for more than 15% of the work day, or missed more than 2 days of work a month, would not be able to maintain competitive employment. AR 50-51. Plaintiff's testimony casts serious doubt, if credited as true, as to whether he would be able to meet these criteria.

## B. Medical Opinion Evidence: State Agency Consulting Physicians

Plaintiff argues that the ALJ relied upon the opinions of the state agency consulting doctors, but such reliance was in error because the ALJ never specified which of Plaintiff's testimony was given less than full credit relative to the opinions, and the opinions, provided in 2017, did not include relevant medical record evidence from later.

The Social Security regulations and case law provide a detailed hierarchy for how an ALJ should evaluate multiple medical source opinions when they are from different sources and contain different opinions. In Plaintiff's case, there are no medical source opinions that differ from those of the state agency consulting doctors' opinions. Instead, Plaintiff argues that the ALJ should have articulated how certain regulatory factors were applied to the evaluation of the medical source opinions at issue. Plaintiff points to 20 C.F.R. § 404.1527(c) to suggest that there are certain factors that the ALJ must, but did not, consider. The first two evaluative factors in this regulation govern how an ALJ should weigh distinct opinions where the authors have different degrees of examination or treatment of the patient. The third criteria is "supportability" and the fourth is "consistency". 20 C.F.R. § 404.1527(c)(3)-(4). The fifth listed criteria is that a doctor who opines on an area in which they specialize deserves greater weight than an opinion on the same issue by a doctor who is not a specialist in that area. The ALJ did not compare the opinions of consulting physicians to those of a treating or examining physician, or to a specialist, because such opinions were not in the record. The only two relevant factors were, therefore, supportability and consistency.

After explaining the findings in the state agency consulting doctor's opinion, the ALJ found that

> The opinions of the State agency psychological evaluators are given great weight because they reviewed the longitudinal medical evidence of record, their opinions are consistent with the record, with the claimant's daily activities such as working at the Mission, and with one another.

AR 19. This passage demonstrates that the ALJ considered the supportability (based on review of the longitudinal record) and consistency (consistent with the medical record and with Plaintiffs work at the Mission) of the opinions. Plaintiff argues that the ALJ failed to acknowledge that the medical source opinions, authored in 2017, pre-dated the ALJ's opinion and did not include 2018 medical records. The ALJ's discussion of the medical opinion evidence considered both the supportability and the consistency of the opinions, and the fact that the opinions pre-dated some medical evidence does not negate the ALJ's ability to rely on them as a source of information as to Plaintiff's abilities at the time of the opinions. Although the ALJ's consideration of the medical record overall was faulty and one-sided, the consideration of the two opinions in isolation was not error.

## C. Lay Witness Testimony

Plaintiff's former roommate provided a lay witness statement with information about his symptoms, his behavior, and his daily living activities. The ALJ did not comment upon this testimony. The ALJ erred by failing to mention the lay witness testimony, and the Commissioner concedes this error. The Commissioner argues that any error was harmless because the reasons that the ALJ rejected Plaintiff's testimony apply equally well to the lay statement, and because the lay statement is contradicted by the "more reliable" medical opinion statements from the State agency consulting doctors.

PAGE 17 – OPINION AND ORDER

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). However, "a lack of support from the 'overall medical evidence' is [] not a proper basis for disregarding [lay witness] observations. The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citations omitted) (citing cases and concluding: "A lack of support from medical records is not a germane reason to give 'little weight' to those observations.")).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008)). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117. When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative

of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Plaintiff argues, correctly, that the lay witness statement provided useful information which added to Plaintiff's testimony. The lay testimony stated that Plaintiff has paranoia, AR 224, and that Plaintiff gets scared and thinks that people are going to hurt him, AR 228, 230. It also conveys that Plaintiff has difficulty going out alone and can only do so when his symptoms are relatively mild ("if he is doing ok"). AR 227. These symptoms are not in Plaintiff's function report (*see generally* AR 232-38) and are distinct symptoms the lay witness has observed.

The Commissioner argues that because the ALJ credited the state agency consulting physicians, error in neglecting to address the lay statement is harmless. The opinions of the state agency consulting physicians are a form of "more reliable" medical evidence, the Commissioner argues, under Social Security Ruling 06-03p, which addresses how an ALJ should evaluate and compare medical source opinions. *See* SSR 06-03p available at 2006 WL 2329939, at *5 ("The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source.'"). This rule is irrelevant to the Commissioner's argument, which is that if a medical source opinion provides that a Plaintiff can work, failure to address any lay witness testimony that indicates otherwise is harmless. Such a rule would entirely obviate the purpose of lay witness testimony.

Even if the ALJ had provided sufficient reasons for rejecting some of Plaintiff's testimony, which he did not, such rationale could not be imputed onto the lay witness' distinct

testimony that indicated symptoms and restrictions not contained in Plaintiff's function report or testimony. Because no discussion exists in the record that can be applied to the lay witness testimony, its disregard constitutes error. It is possible that, if discussed and credited, the lay witness statement could impact the ALJ's decision about Plaintiff's RFC. This creates a substantial likelihood of prejudice. Therefore, the ALJ committed harmful legal error when he ignored the lay witness statement which provided additional symptom testimony.

### D.  Remand for Further Proceedings

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the

district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

Under this analysis, crediting the testimony of Plaintiff and the lay witness as true, there remains outstanding issues to be resolved. The Plaintiff's testimony and the testimony of the lay witness are in apparent conflict with the medical opinion evidence. Further proceedings to resolve these conflicts and ambiguities are necessary.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 5th day of August, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge